Dear Mr. Randall:
This letter is in response to your question asking:
 Can the executive director of the Missouri State Employees' Retirement System, an actuary, perform the required actuarial studies as required by House Bill 130 of 1979?
You also state:
 House Bill 130 of the 1st Regular Session of the 80th General Assembly (1979), now sections 105.660 to 105.685, requires that certain actuarial information be developed for any bill which proposes a substantial change in retirement benefits for any member of a retirement plan.
 It is unclear as to who is to pay for such studies.
 The executive director of the Missouri State Employees' Retirement System is an actuary within the definition of same contained in H.B. 130. Can he perform the actuarial studies required? Can he be reimbursed for this additional duty? Must he or the system be reimbursed? Is there a potential conflict of interest?
House Bill No. 130, 80th General Assembly (now Sections105.660, RSMo Supp. 1979, et seq.) requires an actuarial study with respect to certain legislative changes in retirement plan benefits for elected or appointed public officials or employees of the state of Missouri or any political subdivision or instrumentality of the state.
You have stated that the executive director of the Missouri State Employees' Retirement System is an actuary within the definition of § 1(5), which provides that an actuary is either one who is a member of the American Academy of Actuaries or who is an enrolled actuary under the Employee Retirement Income Security Act of 1974 and who is experienced in retirement plan financing.
Section 3 of House Bill No. 130 provides that when the general assembly is the legislative body responsible for authorizing a substantial proposed change in plan benefits, a prepared statement regarding the cost of such change shall be made available for its consideration prior to taking final action and if any additional change in cost or benefits is made by either house or committee thereof, the actuary making the original cost statement is required to amend the statement to reflect the additional feature. Also under § 3 the statement of costs is required to be filed in the office of the chief clerk of the Missouri House of Representatives and with the secretary of the Senate.
Section 5 of House Bill No. 130 provides:
 1. For any proposed change in plan benefits, the expense of having the cost statement prepared shall be assured before the legislative body may take final action to approve a proposed substantial change in plan benefits.
 2. The expense of having the cost statement prepared shall be paid by the plan if the substantial proposed change is initiated or approved by the plan's governing board.
 3. When the general assembly is the legislative body considering a proposed change in plan benefits, the committee on state fiscal affairs, upon approval by a majority of the statutory number of representatives serving on the committee, may assume the expense of preparing a cost statement required by this act by employing or contracting with an actuary or actuaries who possess the qualifications required by the provisions of this act upon such terms as may be agreed upon and within the limits of appropriations made therefor, or may order the plan to provide such statement.
 4. If the expense of preparing the cost statement is not assured by reason of subsections 2 or 3 above, the expense shall be paid by the individual, group or individuals, department or agency seeking such proposed change.
Under § 104.460, RSMo, the board of trustees of the retirement system has authority to appoint a secretary, assistant secretary and other employees of the system. The salary for the executive director (secretary) of the retirement system is not set by law, and he does not serve for a particular term. Such employees of the system receive such salaries as are fixed by the board and their necessary travel expense as authorized by the board under § 104.470, RSMo.
Although § 2 of House Bill No. 130 provides that the legislative body or committee, which determines the amount and type of plan benefits to be paid shall, before taking final action on any substantial proposed change in plan benefits, cause to be prepared a statement regarding the cost of such change as provided therein, we believe that the provisions of § 5.3 are applicable where the General Assembly is the legislative body considering a proposed change in plan benefits. Under § 5.3, the committee on state fiscal affairs, upon proper approval, may assume the expense of preparing a cost statement by employing or contracting with an actuary or actuaries who possess the required qualifications upon such terms as may be agreed upon and within the limits of appropriations made therefor or may order the plan to provide such statement. And, if the expense is not assured by reason of § 5.2, § 5.3, the expense is to be paid pursuant to § 5.4.
In our view, the actuarial study is a mathematical process and it would not be improper for the executive director (secretary) of the retirement system as a defined actuary with the consent of the board of trustees to perform the study which is required and, if authorized, to receive compensation for the study irrespective of the source of the compensation.
Very truly yours,
 JOHN ASHCROFT Attorney General